People v. Roger Perkins 524-0299 Mr. Mewton Mr. Lemmings Good afternoon, Your Honors. May it please the Court. My name is Julia Mooson with the Office of the State Appellate Defender, and I'm here now on behalf of Roger Perkins, Jr., who is at this moment serving a five-year-old son. Mr. Perkins was sentenced to a very long sentence for unlawful possession of .004 grams of methamphetamine. Mr. Perkins' case is really about one thing, knowledge. Specifically, the difference between common knowledge and legal knowledge. That difference is the reason the State failed to prove Mr. Perkins possessed the .004 grams of methamphetamine found inside of a crumpled-up piece of tinfoil that fell from his person. And that difference is why we are here today. In his opening brief, Mr. Perkins raised three issues, but I want to focus on the two that highlight the importance of distinguishing between knowledge, as it is commonly understood, and knowledge that creates legal liability. First, the State did not prove Mr. Perkins guilty beyond a reasonable doubt because it did not prove that Mr. Perkins knew, such that he was consciously aware of it, that the tinfoil ball on his person contained .004 grams of a substance. And that he knew that that substance was specifically methamphetamine. And second, that Mr. Perkins' trial counsel was ineffective for failing to instruct the jury as to that critical difference between common knowledge and legal knowledge. The statute that Mr. Perkins was charged under states simply, it is unlawful knowingly to possess methamphetamine or a substance containing methamphetamine. This means that for the State to sustain a conviction under this statute, it needed to prove not only that Mr. Perkins knew that he possessed a substance, but also that he knew that the substance he possessed contained methamphetamine. Illinois Pattern Criminal Jury Instruction 5.01b, Defining Knowledge, states, A person knows the nature or attendant circumstances of his conduct when he is consciously aware that his conduct is of that nature or that those circumstances exist. What that means for Mr. Perkins is that for him to have knowingly possessed the .004 grams of methamphetamine, he would not only have to have been consciously aware that he was in possession of a small, crumpled piece of tinfoil, that the police themselves only found during a secondary search of his person, but that unfolded deeply within that tinfoil ball was less than one-tenth of a gram of a substance, and that that substance was specifically methamphetamine. At trial, the State presented no direct or circumstantial evidence that Mr. Perkins was either consciously aware of the attendant circumstances of his conduct, such that he was not only aware he was in possession of that small piece of tinfoil, but that he was additionally aware that tinfoil had .004 grams of methamphetamine, because there wasn't any evidence to that effect. At no point did Mr. Perkins state he was aware of what was in the tinfoil or that he had recently or ever used methamphetamine. At no point did Mr. Perkins act as if he was aware of what was in the tinfoil, such that an inference could be made he was aware of the presence of contraband. And finally, the amount of residue in the tinfoil, only .004 grams, was fully obfuscated from not only Mr. Perkins' view, but the view of the arresting officer. But counsel, I mean, you don't necessarily have to have direct evidence of knowledge, correct? I mean, this fell out of his pocket, this tinfoil, right? Can the jury infer from that that he had knowledge of what was in his pocket? Not in this case, Your Honor. The record in Mr. Perkins' case indicates that at the time of his initial arrest, he told the police officers that what he was trying to do at the time of his arrest was retrieve his personal clothes from his grandmother's home. Which is to say that the jury could have also inferred that he was not necessarily wearing his clothes at the time, that the tinfoil ball fell out of his pocket. And the record also doesn't indicate affirmatively that those were his clothes to support that inference, that because it fell out of his pocket, he knew the tinfoil was there. Similarly, the small amount of residue taken by the tinfoil wasn't visible until it was unwrapped. Accordingly, the evidence was not sufficient to establish that Mr. Perkins had legal knowledge that he possessed the .004 grams of methamphetamine scraped from the crumpled up tinfoil recovered from the area around his person during a secondary search. The jury, however, was unable to effectively evaluate the state's evidence because Mr. Perkins' trial counsel provided him ineffective assistance. Which brings us to the second issue in Mr. Perkins' case where knowledge is critical. His trial counsel's failure to tender an available jury instruction defining legal knowledge despite Mr. Perkins' entire defense relying solely on the jury's understanding of that particular definition. To begin, it is worth clarifying that Mr. Perkins' argument is not that the jury instruction for knowledge be tendered for every case where knowledge is an element of the charge crime. Instead, Mr. Perkins is arguing that in the narrow and specific circumstances of his case, it was deficient performance for his trial counsel to fail to instruct the jury as to the legal definition of knowledge where whether Mr. Perkins knew that what he possessed was in fact methamphetamine was the basis of his trial counsel's entire theory of defense and where the common definition of knowledge wouldn't have been enough for the jury to clearly understand that narrow theory of defense. In short, under the law, Mr. Perkins had to know he had the substance on his person and that the substance was methamphetamine. Effectively requiring the state to prove two separate kinds of knowledge, which is a distinction that would have been made clearer to the jury had Mr. Perkins' trial counsel provided the available jury instruction. While this Court has previously held in Lowry that the Illinois pattern jury instruction for knowledge need not be given in every case for knowledge of that issue, Mr. Perkins likens his case instead to Pecom and Serrano because knowledge is not only an issue in his case, but in fact the entire theory of defense. In Pecom, the Illinois Supreme Court found that defense counsel was ineffective for failing to tender an instruction on the defense of compulsion because whether the defendant was compelled was the deciding issue. As such, defense counsel's failure to instruct the jury as to the defense of compulsion was a critical omission that denied the defendant a fair trial. Similarly, in Serrano, this Court found that trial counsel's failure to tender a jury instruction on the theory of defense cannot be considered trial strategy because it actually undermines the chosen strategy. Here, Mr. Perkins' trial counsel was ineffective for failing to tender a jury instruction as to knowledge because the narrow definition of legal knowledge constituted the entire defense theory of the case. By not tendering the available jury instruction, trial counsel denied the jury the necessary legal tools to assess the central issue in Mr. Perkins' case and undermine the defense's own strategy. Okay, I want to stop you there. The jury was instructed as to, I think maybe two separate IPI instructions that to sustain the charge, the state had to prove, and I'm reading, prove the following propositions, that the defendant knowingly possessed a substance containing methamphetamine, among other things. So on two occasions, in two instructions, they were instructed. They had to find that he knowingly possessed, and if I remember correctly, and I believe I know this correctly, the defense argued the knowingly, the knowing issue extensively to the jury, and that was basically their theory of the case. And, you know, the jury heard what the arguments were and found the defendant guilty, that he knowingly possessed it. So, you know, they were told they had to find that he knowingly possessed it. So where is the error? The error here, Your Honor, is in the fact that while, yes, there are two jury instructions that stated that to sustain the conviction, Mr. Perkins would have had to knowingly possess the substance. In this case, and his trial counsel did make an argument to that effect, I believe, during both opening and closing arguments. However, that argument was then immediately followed by instructions from the court stating that closing and opening arguments are not evidence, which could make it difficult for a jury to understand the significance of how that defense is being presented to them. Moreover, yes, both instructions required that Mr. Perkins knowingly had to possess the methamphetamine. What we are arguing is that the knowing part of it is almost bifurcated in the sense that he had to know he had the tin foil, and he had to know that inside the tin foil was the methamphetamine. And without an instruction to the effect of knowledge to emphasize the importance of the knowingly part of the other two instructions, the jury may not have been able to understand that it wasn't just that, oh, he knew he had the tin foil. He had to have also known that inside the tin foil was this methamphetamine. And so, for example, in Pegram, I believe in Pegram, the defense of compulsion came up, and the defendant testified in the trial court, or, sorry, apologies, the reviewing court in that case, found that providing an instruction as to compulsion not only fairly delineates it as a defense, but provides the jury with the tools to understand the other evidence offered at trial as part of that defense. Thank you. I see my time is up. May I just briefly conclude? Because the state failed to prove Mr. Perkins knowingly possessed methamphetamine, his conviction must be reversed. An alternative, because Mr. Perkins' trial counsel is ineffective, his conviction should be reversed, and he should be remanded for a new trial. Thank you. Thank you. Any questions? No. No questions. All right. And obviously, you'll have your time for a vote. Thank you. Thank you. How are you, Mr. Lennox? Great, how are you, Your Honor? Doing well. Go right ahead. Good afternoon, Approving Counsel, Your Honors, and may it please the Court. My name is Michael Lennox, and I represent the state in this matter. This Court should affirm the defendant's conviction for possession of methamphetamine. Where the evidence was sufficient to convict the defendant beyond a reasonable doubt, trial defense counsel not seeking a pattern during instruction on knowledge does not amount to ineffective assistance, and the defendant did not clearly and unequivocally request to proceed pro se such that plain error resulted. As the defendant focused on the first two issues, Your Honors, I will, too, focus on the first two issues. So regarding the sufficiency of the evidence, a criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. When considering a challenge to a criminal conviction based upon the sufficiency of the evidence, this Court will not retry the defendant. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found an essential element of the crime beyond a reasonable doubt. Mental elements of offenses such as knowledge are ordinarily established by circumstantial evidence, as Your Honor, Justice Shouler noted, rather than direct proof, and the defendant's actions, declarations, or conduct are all considered. And lastly, because knowledge is difficult to prove, when actual or constructive possession is established, the elements of knowledge can be inferred from the surrounding circumstances. Here, the defendant was discovered with actual possession of the tinfoil containing methamphetamine upon a second search at the jail. Therefore, we must look to the surrounding circumstances to infer knowledge. It's noted in the record on page 8 of the transcripts that the defendant was actually on parole at the time for another case of possession of methamphetamine. The defendant had broken the window of his grandmother's home in an attempt to get into the home, and when Officer Knisely arrived, the defendant was acting so aggressive and erratic that the officer pulled his firearm and had to request additional units. After an additional officer arrived, the officers were able to put the defendant in handcuffs, and upon conducting a search, Officer Knisely discovered, quote, a white corner baggie, which is a plastic clear baggie that the corner is torn off with a white residue inside, unquote. Based on Officer Knisely's experience, he believed that the defendant's baggie contained methamphetamine, and his experience includes having encountered, quote, well over 50, unquote, similar baggies in the past. Those baggies tested, were tested in those instances, and they tested positive for methamphetamine. And the foil that was found when the defendant was searched a second time in the jail, when that foil that was found, the officer noted that that foil had, quote, a burnt residue inside, unquote. Your Honors, it cannot be said that the evidence here is so improbable or unsatisfactory that no rational trier of fact could have found that the defendant knew the tin foil contained methamphetamine, where a jury could easily find that the defendant knew of this, where he likely smoked the methamphetamine from the, quote, white corner baggie, unquote, that Officer Knisely previously found on him, and that his erratic behavior could have been the result of this previous use of methamphetamine. Regarding the knowledge of jury instruction, to show an effective assistance of counsel, a defendant must show that their attorney's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. Matters of trial strategy are generally immune from ineffectiveness claims, and the defendant must show that counsel's performance was not only deficient, but that said performance rendered the trial result unreliable or rendered the proceeding fundamentally unfair. The defendant must overcome the presumption that counsel's action was sound trial strategy, and the court must look to the totality of the circumstances when evaluating counsel's performance. Now, in response to the defendant's reply brief, in his reply, the defendant cites to Serrano and Pegram for the assertion that both cases concerned jury instructions, I'm sorry, quote, jury instructions that effectively encompass trial counsel's entire theory of defense, such that trial counsel's failure to tender them could not be seen as trial strategy because it could only undermine the chosen strategy, and this is page 10 of the reply brief. Both cases, however, are clearly distinguishable from the case at bar. Both Pegram and Serrano involved trial defense's failure to tender an instruction on the affirmative defense of compulsion. In Pegram, the defendant testified that two men with clothing concealing their identities threatened to kill him if he did not cooperate and even put a pistol to his head. In Serrano, the defendant testified he was first asked to engage in a robbery with two individuals and he declined. The same individuals returned to him later armed and told him he would be helping them. He stated he helped only out of fear for his life and for his family's lives. Both cases involved armed robbery and Serrano also involved murder, but the court determined if the trier of fact believed he was compelled to help with the armed robbery, then the murder that was committed by another would not have been attributable to the defendant. The First District Court of Appeals found in both cases that compulsion instruction was necessary for the defense. Here, lack of knowledge is not an affirmative defense. It's simply a missing element to the crime. Further, while the concept of being compelled to do something may be generally understood by the jury, the affirmative defense of compulsion has an exception to it, being that it cannot be used as an affirmative defense for, quote, offenses punishable by death, unquote, which is not something easily understood by knowing the common meaning of compulsion. Here, however, knowing something or being knowledgeable is easily and commonly understood. Moving back to the argument, here the defendant cannot overcome the presumption of sound trial strategy, let alone establish prejudice. When reviewing the record, it appears that trial counsel's theory of the case from start to finish was that the foil had either been placed on the defendant and it was not originally his or that the methamphetamine somehow became attached to the foil by the evidence being poorly handled. The first theory invokes the idea of malfeasance of the police department, a concept far apart from knowledge. And the second theory invokes a chain of custody or evidence tampering issue. Evidence of these theories can be seen in the record. In the transcripts on pages 256 and 257, in the defense attorney's opening argument, she states, today's case is about whether or not the state can prove the defendant possessed methamphetamine. Beyond a reasonable doubt, the state has the burden to prove that case. I want you to watch really closely. There's going to be video of a thorough search at the scene where they arrested Mr. Perkins. They did find a plastic baggie there. You will then see a thorough search of Mr. Perkins, his coat, his pockets, and they bring out a lot of stuff from his pockets. Then we go to the jail, and then we're going to see Mr. Perkins being searched again there. And while he's being searched, not by Officer Knisely, there is something you see on the video kind of fly out of the area of Mr. Perkins. However, at this point, the body camera goes off. So I want you to watch very closely. Watch for details. Watch for the thoroughness of the search at the scene to see how thorough they were, and then this incident at the jail. At the end of the case, we hope you're convinced that the state has not proven its case and that it's burdened. In the cross-exam of Officer Knisely, the defense attorney focused a lot on how and where the foil was discovered and also asked questions that suggested that the foil could have been contaminated by other evidence, and this can be seen in the transcripts on pages 276 through 279, 283, and 300 to 301. And in her closing, the defense attorney stated, Officer Knisely never observed the foil where it came from off of Roger, and if it did, but we know it was on the floor. We see Roger being searched in the jail, which is common. So many grains of meth have fallen in that area before. So how many grains of meth have fallen in that area before with people being searched? And, Your Honors, I see that my time is up. I'd ask you just to look at the transcripts on pages 322. Go ahead. Okay. How often is the floor cleaned, and then somehow this foil ends up on the counter. How often is it cleaned? Did the foil get wet? Did the foil just pick up some grains that were left over from the previous person booked into jail and previous evidence, and then both the plastic baggie and the piece of foil are put into the same bag so it's cross-contaminated by each other? This clearly isn't a relation to the mens rea of this crime. It's clearly addressing the trustworthiness of the evidence, and for those reasons, we'd ask that you affirm the lower court's ruling. Thank you. Any questions? No questions. No questions. Thank you. Thank you, Your Honors. Rebuttal. Thank you, Your Honors. To briefly provide an argument and rebuttal, Mr. Lennox, Mr. Lennox argued that the evidence was sufficient because the tin foil was found on Mr. Perkins' person such that you can infer elements of knowledge from actual possession. We would argue, however, that although the tin foil, even in the circumstances where actual possession could imply knowledge, that there is a line of cases similar to Mr. Perkins' where there are packages that are either unopened or the key distinction there is that there are packages that are, that the contents of the packages are obfuscated from view. These are cases referenced in Mr. Perkins' opening brief, specifically Hadoopi, Ortiz, and Benz are examples of cases where although there was actual possession of a controlled substance or other contraband, the lack of the person who had the actual possession of those items, their inability to see what was inside the enclosed packaging was reason for not actually being able to infer that knowledge. Moreover, counsel referenced that in the record, it said Mr. Perkins was on parole for a meth charge during the time of his arrest. However, that is not evidence that was presented at trial. Neither was his aggressive conduct at the time of his arrest, at least not in the terms that it is presented today as implying his erratic behavior could have indicated his meth use such that he likely smoked meth from the white baggie. Those are tenuous inferences. We would argue that .004 grams found in a crumpled up piece of tinfoil does not then imply the kind of knowledge or series of events that the state is arguing occurred today. And moreover, although Officer Nestle testified that with his belief and experience the white corner baggie contained meth, what that would require would be for the jury to have heard Officer Nestle's testimony about his belief based on his experience, regardless of the fact that the lab technician himself testified that they could not test the substance in the white corner baggie because it wasn't enough to test, so the jury never received any indication of whether or not the white corner baggie actually contained meth, which would then mean that for Officer Nestle's testimony to maintain this, the jury would have to infer from his belief that Mr. Perkins had knowledge. And we would say that that is too tenuous of an inference to make. As to the point of impact of assistance of counsel, we would argue that while lack of knowledge is not an affirmative defense, it is an element of the crime that must be proven. And that is why, although it is not an affirmative defense like compulsion, which is the offense in Pegram and Serrano, it is enough to rise to the, it is enough to apply the analysis in those cases that Mr. Perkins' trial attorney should have under that instruction based on the same logic presented in Pegram and Serrano. Moreover, the arguments that trial counsel made, arguing malfeasance or other options for the meths of God on Mr. Perkins', we would argue that inherence of both of those arguments is his lack of knowledge, and those are just reasons for why he may not have known it was on him. Or that those arguments, while not in relation to the mens rea, of this crime, were not trial counsel's thesis of the case. As a result, the defendant can overcome the presumption of trial strategy, and because of the closeness of the evidence in his case, we would argue that his counsel's deficient performance was enough to prejudice him because there was not overwhelming evidence to counteract trial counsel's errors with his defense. I believe that is all. Thank you. Where did you come down from? I came down from Chicago. This is your first visit down here? It is. We like to brag about our courthouse. You are standing where Abraham Lincoln did back a hundred and some odd years ago. Good thing he told you after you arrived. That is helpful. This is also my first oral argument, so this is very exciting. Thank you very much. I bring it up because we are getting some attorneys from OSAD 1 and OSAD 2, and we always try to tell them, while you are here, take in some of that history from the courthouse before you travel up. Do so if you have time, and have safe travels home.